**Augustine DUBE, et al., Plaintiffs,**

v.

**EAGLE GLOBAL LOGISTICS a/k/a Eagle U.S.A. Airfreight, Inc., Defendant.**

**No. CIV. A. 00–2461.**

United States District Court, E.D. Pennsylvania.

July 5, 2000.

Brain P. Kenney, Elliott, Reihner, Siedzikowsky and Egan, P.C., Blue Bell, PA, Daniel Guttman, Washington, DC, W. Michael Hamilton, Provost & Umphrey, Nashville, TN, Traci L. Buschner, Washington, DC, Brain P. Mc Cafferty, Provost Umphrey Law Firm, Norristown, PA, Rueben A. Guttman, Provost Umphrey Law Firm, LLP, Washington, DC, Charles V. Firth, Provost Umphrey Law Firm, Washington, DC, Marian S. Rosen, Marian S. Rosen & Associates, Houston, TX, for Augustine Dube, Noelle Davis, Kshanti Morris, Ruben Capaletti.

Stephen B. Burbank, Univ. of PA Law School, Philadelphia, PA, Thomas P. Dowd, Littler, Mendelson, Fastiff, Tichy

and Mathiason, Baltimore, MD, for Eagle Global Logistics.

### MEMORANDUM & ORDER

KATZ, Senior District Judge.

The defendant moves to transfer this action to the Southern District of Texas, Houston Division. Because the defendant has not met its burden of showing that the interests of justice or the convenience of the parties would be served by such a transfer, the motion will be denied.

*Background*

Eagle Global Logistics, also known as Eagle U.S.A. Airfreight, Inc., is a corporation with its principal place of business in Houston, Texas. Among its numerous other locales, it maintains an office and shipping terminal in Folcroft, Pennsylvania, near Philadelphia. The four named plaintiffs in this action—Augustine Dube, Noelle Davis, Kshanti Morris, and Ruben Capaletti—bring employment discrimination claims on behalf of themselves and putative class members, which include Eagle's female, African American, and Hispanic employees and job applicants.

*Discussion*

■ "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). To justify a transfer under this section, the moving party must show that venue is proper in the transferee district and that the transfer will serve the convenience of the parties and witnesses and will promote the interest of justice. *See American Littoral Soc. v. United States E.P.A.*, 943 F.Supp. 548, 550 (E.D.Pa. 1996); *see also Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995) (stating that moving party has burden of justifying transfer). In considering these issues, the court should look to such factors as:

(1) the plaintiff's choice of forum; (2) the relative ease of access to sources of proof; (3) the availability of compulsory process for attendance of unwilling witnesses; (4) the possibility of viewing premises, if applicable; (5) the cost of obtaining attendance of willing witnesses; (6) all other practical [considerations] that make trial of a case easy, expeditious, and inexpensive; and (7) "public interest" factors, including the relative congestion of court dockets, choice of law considerations, and the relationship of the community in which the courts and jurors are required to serve to the occurrences that give rise to the litigation.

*American Littoral Soc.*, 943 F.Supp. at 550 (citations omitted); *see also Jumara*, 55 F.3d at 879 (describing factors). There is no doubt that venue would be proper in Texas, as it is the defendant's principal place of business and a substantial part of the occurrences giving rise to the claims occurred there. *See* 28 U.S.C. § 1391(b). The more relevant question is the balancing of interests.

The court will begin with the heart of the defendant's motion to transfer, the so-called public interest factors. Eagle argues strenuously that related litigation has already commenced in Texas and that this dispute should also proceed there. The court agrees that if the defendant established that a truly related case was being litigated in Texas, this would be a factor supporting transfer. *See, e.g., Supco Automotive Parts v. Triangle Auto Spring Co.*, 538 F.Supp. 1187, 1192 (E.D.Pa.1982) ("It is well-settled in this district that the pendency of a related case in the proposed transferee forum is a powerful reason to grant a motion for a change of venue."); *Impervious Paint Indus. Ltd. v. Ashland Oil*, 444 F.Supp. 465, 468 (E.D.Pa.1978) (noting same). As the defendant notes, it is not necessary that the cases be so closely related that they would be consolidated, so long as permitting litigation to proceed in the same forum would avoid duplication of discovery and proof. *See, e.g., Impervious Paint*, 444 F.Supp. at 468.

The difficulty with Eagle's argument is that the Texas action does not appear to address the employment discrimination allegations contained in this complaint except tangentially. Eagle did not attach the pleadings from the Texas case to its motion to transfer, but it did include transcripts of several hearings. *See* Def. Ex. 14–21. From these transcripts, the court surmises that Eagle sued its former counsel, Judith Robertson, for allegedly disclosing confidential information to the EEOC. Eventually, Eagle added the EEOC as a defendant, alleging that it had engaged in investigatory improprieties. Eagle and Ms. Robertson settled, but the case against the EEOC is ongoing.

Several considerations lead the court to conclude that the Texas litigation has little significance to the present dispute, at least for purposes of a motion to transfer. First, with the exception of Eagle, the parties are not the same: none of the plaintiffs in the present case were named parties in Texas. Second, Eagle's allegations against Ms. Robertson that were amended to include administrative procedure claims against the EEOC did not address the substantive claims of employment discrimination; rather, they seem to have focused almost entirely on privilege and confidentiality issues. While Eagle seems correct in its assertion that the Texas court questioned the EEOC's use of certain documents and investigatory techniques, that court did not purport to address whether individual employees and applicants were or were not the victims of class-wide discrimination on the basis of race, sex, or national origin. The defendant may ultimately challenge the admissibility of certain evidence, but, on the present record, the court will not simply assume that a case brought by an employer alleging investigatory improprieties is necessarily similar to actions brought by individual employees alleging discrimination. The fact that Eagle itself has chosen to bring suit in Texas should not require any plaintiff who sues the company also to bring suit in Texas. *Cf. Ayling v. Travelers Prop. Cas. Corp.*, Civ. A. No. 99–3243, 1999 WL 994403, at *4 (E.D.Pa. Oct.28, 1999) (transferring case in large part because of pending case in another district; stressing, however, factual similarities between the cases and congruence of legal issues as demonstrated by defendant).[1] The court does not consider the existence of the Texas case to be a factor supporting transfer and will accordingly turn to the other factors.[2]

A particularly important factor is the plaintiffs' preference and convenience. "[I]n ruling on defendants' motion the plaintiff's choice of venue should not be lightly disturbed." *Jumara*, 55 F.3d at 879 (citations omitted); *see also First Union Nat'l Bank v. United States*, 55 F.Supp.2d 331, 332–33 (E.D.Pa.1999) (citing other cases so stating). It is true that if the plaintiffs do not reside in the forum in question and if the events at issue occurred elsewhere, this preference is entitled to less weight. *See, e.g., Lindley v. Caterpillar, Inc.*, 93 F.Supp.2d 615, 617 (E.D.Pa.2000) (transferring action from Pennsylvania to Florida in part because plaintiff resided in Florida, property at issue was located in Florida, and all events occurred in Florida); *Matt v. Baxter Healthcare Corp.*, 74 F.Supp.2d 467, 469–70 (E.D.Pa.1999) (transferring action from Pennsylvania to Illinois in part because

1. This court makes no comment regarding the suggestion that the Texas court believed that some employment discrimination claims might be brought as a compulsory counterclaim in Texas. *See* Ex. 21 at 5–6. The management of that case is none of this court's concern, and the Texas court addressed the possibility of an action initiated by the EEOC.

2. The court does not consider the other public interest factors to weigh in favor of transfer, either. In the abstract, court congestion weighs slightly in favor of this district. *See* Plf. Ex. R. The relevant districts in Pennsylvania and Texas each have a local interest in the controversy, and judicial familiarity with applicable law is a moot point as the plaintiffs bring federal claims.

plaintiff did not reside in the district and most events occurred in Illinois).

In this case, however, two of the four named plaintiffs have ties to Pennsylvania and allege that they were the victims of discrimination while in Pennsylvania. First, Mr. Dube claims to have applied for a cargo tracking position in Eagle's Philadelphia facility, only to have been refused employment because of his race. *See* Compl. ¶ 16; Plf. Ex. H ¶ 2 (Dube affidavit so stating).[3] He resides in Pennsylvania. *See* Compl. ¶ 16; Plf. Ex. H ¶ 1. Defendant concedes that Ms. Davis, another named plaintiff, worked for Eagle near Philadelphia until her termination. While defendant places great stock on the fact that she resided in New Jersey during part of her employment and presently, *see* Def. Ex. 9, the incidents of which she complains occurred at her Pennsylvania place of employment. *See* Plf. Ex. B ¶ 1 (Davis affidavit stating that she worked at Eagle's Folcroft terminal from July 1996 until March 2000). There is no dispute that the two other named plaintiffs do not have ties to Pennsylvania, but each has expressed a strong preference for proceeding in this forum. *See* Plf. Ex. J ¶ 5 (Capaletti affidavit stating that he would rather proceed in

Pennsylvania; noting that he would have to fly to either Texas or Pennsylvania); Plf. Ex. K ¶ 7 (Morris affidavit stating that she would rather proceed in Pennsylvania).[4] Overall, the plaintiffs' ties to Pennsylvania are significantly closer than in those cases where actions have been transferred,[5] and this factor weighs against the transfer, particularly as the defendant has a significant presence in this district and does not claim that it could not proceed in this forum.

The next consideration is the location of sources of proof, including books and documents. Eagle contends that relevant documents will be located almost exclusively in Texas, although it offers no affidavits or other support for this argument. Initially, while the location of documents is relevant, there is no allegation that necessary proof could not be brought to this forum. *See Jumara*, 55 F.3d at 879 (noting that location of books and documents is relevant "to the extent that the files could not be produced in the alternative forum"). Also, Eagle's contention does not account for the fact that three of the named plaintiffs allege discrimination occurring outside of Texas and that two of those three allege discrimination in the Northeast, where Ea-

3. Given these allegations, it is difficult to see how defendant's argument that Mr. Dube never worked for Eagle furthers its position.

4. The court acknowledges affidavits from several individuals who state that they are putative class members expressing a preference for proceeding in Pennsylvania rather than Texas. *See* Plf. Ex. C, I, L–P.

5. On this point, the defendant repeatedly accuses plaintiffs of engaging in forum-shopping. While Eagle is obviously correct that plaintiffs do not wish to proceed in Texas, this is of little significance given that two of the named plaintiffs allege discrimination in this forum and live in or near this district.

The court does take note of Eagle's argument that the plaintiffs' choice is entitled to somewhat less weight because they are making class allegations. As defendant suggests, there is case law that minimizes the significance of plaintiffs' preference in such circumstances. *See, e.g., Koster v. Lumbermens Mut.*

*Cas. Co.*, 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947) (stating that in a derivative suit in which many plaintiffs could assert the corporation's interests, "the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened"; stressing, however, that facts of individual case will be determinative); *Howell v. Shaw Indus.*, Civ. A. No. 93–2068, 1993 WL 387901, at *4 (E.D.Pa. Oct.1, 1993) (stating that plaintiffs' preference in class action gave them only a slight edge). To say that a plaintiff's preference is entitled to less weight, however, is not to say that a plaintiff's preference is entitled to no weight, particularly in the absence of other evidence supporting transfer. *See, e.g., Ayling*, 1999 WL 994403, at *3 (finding that existence of class action allegations did not outweigh plaintiff's preference when plaintiff alleged both that her role and the financial burden of transfer would be significant). Particularly as the court has no reason to believe that the named plaintiffs' roles will be nominal, their preference still weighs against transfer.

gle has a substantial presence. *See, e.g.,* Plf. Ex. B (Davis affidavit describing scope of Eagle operations in Northeast region); Plf. Ex. F (Hewitt declaration describing Eagle's website representations of site locales; noting that many sites are in Northeast). Given the lack of affidavit or other evidence pertaining to likely sources of proof, *see Plum Tree, Inc. v. Stockment,* 488 F.2d 754, 756–57 & n. 2 (3d Cir.1973); *Electro Med. Equip., Ltd. v. Hamilton Med. AG,* Civ. A. No. 99–579, 1999 WL 1073636, at *10 (E.D.Pa. Nov.16, 1999), the court cannot conclude that the location of proof weighs in favor of transfer. *See, e.g., Simon v. Ward,* 80 F.Supp.2d 464, 470 (E.D.Pa.2000) (declining to transfer when defendant relied on legal argument rather than proof as outlined in *Plum Tree*).

Eagle similarly argues that relevant witnesses will be outside of the court's subpoena power because most of them are located in Texas. Again, the court has no direct information on witnesses likely to be called by the defendant; nor does the court have any evidence that crucial witnesses would be actually unavailable. Eagle's position also fails to account for the fact that three of the individual plaintiffs' claims pertain to alleged discrimination occurring in Pennsylvania or otherwise outside of Texas. Indeed, the court can draw no conclusions as to the likely locale of most witnesses, as the plaintiffs have submitted affidavits indicating that many witnesses would not be found in Houston or even in Texas. *See, e.g.,* Plf. Ex. B ¶¶ 3, 5–7 (Davis affidavit listing various individuals in Northeast region, including Philadelphia, likely to have information relevant to her claim; noting also that Eagle management frequently travels to non-Texas locations); Plf. Ex. I ¶¶ 3–5 (Bernard Greaux affidavit alleging discrimination in Baltimore and Washington, D.C.; naming at least one potential witness); Plf. Ex. K ¶¶ 8–10 (Morris affidavit describing frequent travel by Eagle executives; noting

large numbers of relevant executives outside of Texas); Plf. Ex. P ¶¶ 1, 5 (Robin McVeigh affidavit alleging discrimination in Indianapolis; naming numerous individuals in Midwest likely to be relevant witnesses).[6]

■  Upon consideration of the relevant facts, the court concludes that the convenience of the parties would not be served by a transfer of this action to Texas. While Eagle might benefit from such a transfer, plaintiffs would clearly be inconvenienced, and it is inappropriate to transfer a case when it would simply shift the burden from one party to the other.

*Conclusion*

The existence of a pending Texas case initiated by Eagle alleging claims against the EEOC and Eagle's former attorney does not weigh in favor of transferring a case brought by individual employees and applicants alleging race, sex, and national origin discrimination. Even acknowledging that the class allegations minimize the plaintiffs' forum preference to some degree, the named plaintiffs have established a sufficient nexus with Pennsylvania to deny the motion.

*ORDER*

**AND NOW,** this 5th day of July, 2000, upon consideration of the Defendant's Motion to Transfer, and the response thereto, it is hereby **ORDERED** that the Motion is **DENIED.**

---

6. The discussion regarding the location of Mr. Damiani's deposition, discussed in the letter of July 3, 2000, filed by order of July 5, 2000, does not require a different conclusion on this issue.